1    **WO**

2

3

4

5              IN THE UNITED STATES DISTRICT COURT

6                  FOR THE DISTRICT OF ARIZONA

7

8    VERNON HARRIS,                )    No. CV 02-0494-PHX-SMM
                                    )
9                                   )    **ORDER**
               Plaintiff,           )
10                                  )
     v.                             )
11                                  )
     SUPERIOR COURT OF THE STATE OF )
12   ARIZONA IN AND FOR THE COUNTY  )
     OF MARICOPA, et al.,           )
13                                  )
               Defendants.          )
14   _____)

15

16         Before the Court is Defendants' Motion for Attorney's Fees and Related Non-Taxable

17   Costs, filed July 9, 2008 (Doc. 374).  Plaintiffs filed a Response on October 17, 2008 (Doc.

18   385), and Defendants subsequently filed a Reply on October 31, 2008 (Doc. 388).  The

19   matter is now fully briefed, and the Court, having considered the parties' arguments, finds

20   as follows.[1]

21                          **FACTUAL BACKGROUND**

22         Plaintiff, an African American, was appointed as an Initial Appearance Hearing

23   Officer (also known as a Commissioner) for the Maricopa County Superior Court on

24   _____

25         [1]Local Rule of Civil Procedure 54.2 provides that the court in its discretion or upon
     motion may set an evidentiary hearing on a motion for award of attorney's fees and related
26   non-taxable expenses.  LRCiv 54.2(h).  However, in all other cases, the court will determine
     the appropriate award without such a hearing.  Id.  While Defendants have requested a
27   hearing, the parties have had the opportunity to submit briefing, and the Court would not find
     oral argument helpful in resolving this matter.  Accordingly, the Court finds the pending
28   motion for attorney's fees suitable for decision without oral argument.

February 28, 2000 (Doc. 374, 2:17-18).  As a Commissioner, Plaintiff was an unclassified employee who was not covered by the Merit Rules (Id. 2:18-19).  Plaintiff did not sign any employment contract with the Superior Court and he understood that he was an at-will employee (Id. 2:19-20).  Approximately five months after Plaintiff's appointment, the Court received information that he had engaged in inappropriate conduct toward female staff members and was misusing County resources by using court staff to run personal errands and to prepare correspondence unrelated to court business (Id. 2:20-23).    Following an investigation, Defendants determined that Plaintiff had engaged in unprofessional conduct, showed poor judgment, and violated several Canons of Judicial Ethics (Id. 3:6-9).  Plaintiff was given the choice to resign or be terminated, and Plaintiff chose to resign (Id. 3:9).

On February 28, 2002, Plaintiff filed a complaint in Maricopa County Superior Court (Doc. 1).  The complaint named as defendants the Superior Court, the Arizona Supreme Court, and Maricopa County (Id.).  On March 20, 2002, Defendants removed this action from the Superior Court to this Court (Id.).  On March 27, 2002, Plaintiff filed his first amended complaint, which added the State of Arizona as a defendant, and asserted the following ten claims: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) hostile work environment based on race and gender; (4) race discrimination; (5) false light/invasion of privacy; (6) wrongful termination in violation of public policy; (7) intentional or negligent infliction of emotional distress; (8) defamation; (9) violation of due process and equal protection under the law; and (10) intentional interference with a business relationship (Doc. 3).

## PROCEDURAL BACKGROUND

In an Order dated October 7, 2005, the Court granted Defendants' motion for judgment on the pleadings as to count six of Plaintiff's Amended Complaint (Doc. 217).  Then, in a July 7, 2006, Order the Court granted summary judgment on the remaining nine claims in favor of Defendants (Doc. 332).  Subsequently, in September 2006, Defendants submitted a motion for attorney's fees pursuant to A.R.S. § 12-341.01(A), 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k) and A.R.S. § 41-1481(J) (Doc. 336).  On October 20, 2006, the Court

denied the motion without prejudice because Plaintiff had filed a notice of appeal (Doc. 364). However, the Court indicated that the motion could be refiled upon the appeal's resolution (Id.).  On May 8, 2008, the Ninth Circuit affirmed this Court's judgment in its entirety, and a petition for rehearing was denied on June 18, 2008 (Doc. 390).  Defendants then filed the present Motion for Attorney's Fees and Non-Taxable Costs requesting attorney's fees in the amount of $315,974.65 and non-taxable expenses in the amount of $53,533.66 (Doc. 374). Defendants also seek a reasonable amount related to bringing the present motion.

<strong>STANDARD OF REVIEW</strong>

**I.     Attorney's Fees under A.R.S. § 12-341.01(A)**

An Arizona court may award reasonable attorney's fees to a successful party in a contract action.  A.R.S. § 12-341.01(A) ("In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees"). This statutory provision does not create a presumption that a successful party is entitled to attorney's fees. Associated Indem. Corp. v. Warner, 694 P.2d 1181, 1182-83 (Ariz. 1985) (en banc).  Rather, the language is permissive, and leaves the awarding of attorney's fees to the discretion of the court.  Grand Real Estate, Inc. v. Sirignano, 676 P.2d 642, 648 (Ariz. Ct. App. 1983) (citations omitted).

An award of reasonable attorney's fees under 12-341.01(A) "should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense." A.R.S. § 12-341.01(B).  A defendant is entitled to an award of attorney's fees under the statute if the court finds that no contract existed or if the plaintiff was unsuccessful in recovering on the contract.  Chevron U.S.A., Inc. v. Schirmer, 11 F.3d 1473, 1480 (9th Cir. 1993) (citation omitted).  However, "[An award] need not equal or relate to the attorney fees actually paid or contracted, but the award may not exceed the amount paid or agreed to be paid." A.R.S. § 12-341.01(B).

**II.    Attorney's fees under 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k), and A.R.S. § 41-1481(J)**

A prevailing defendant is entitled to reasonable attorney's fees under 42 U.S.C.

1   § 1988(b), 42 U.S.C. § 2000e-5(k), and A.R.S. § 41-1481(J).  See 42 U.S.C. § 1988(b) ("In

2   any action or proceeding to enforce a provision of [section 1983], the court, in its discretion,

3   may allow the prevailing party, other than the United States, a reasonable attorney's fee as

4   part of the costs"); 42 U.S.C. § 2000e-5(k) ("In any action or proceeding under [Title VII]

5   the court, in its discretion, may allow the prevailing party, other than the Commission or the

6   United States, a reasonable attorney's fee"); A.R.S. § 41-1481(J) ("[T]he court may allow

7   the prevailing party . . . a reasonable attorney's fee").

8          The standard for awarding attorney's fees to a prevailing defendant in both § 1983 and

9   Title VII cases examines whether the "'the plaintiff's action was frivolous, unreasonable, or

10  without foundation, even though not brought in subjective bad faith.'"  Hughes v. Rowe, 449

11  U.S. 5, 14 (1980) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978)

12  (adopting the same standard for awarding attorney's fees in § 1983 cases as used in Title VII

13  cases)).  If the plaintiff's action was frivolous, unreasonable, or without foundation, an award

14  of attorney's fees is appropriate.  The plaintiff's action must be meritless, meaning that it is

15  groundless or without foundation.  Id.

16         "In determining whether this standard has been met, a district court must assess the

17  claim at the time the complaint was filed, and must avoid '*post hoc* reasoning by concluding

18  that, because a plaintiff did not ultimately prevail, his action must have been unreasonable

19  or without foundation.'"  Tutor-Saliba Corp. v. City of Hailey, 452 F.3d 1055, 1060 (9th Cir.

20  2006) (emphasis in original) (quoting Christiansburg, 434 U.S. at 421-22).  Indeed, the sole

21  fact that a plaintiff loses his case is not by itself a sufficient justification for awarding fees.

22  Hughes, 449 U.S. at 14.  Likewise, Arizona law adopts the federal standard.  Sees v. KUTC,

23  Inc., 714 P.2d 859, 862 (Ariz. Ct. App. 1985) (holding that a prevailing defendant in a civil

24  rights action may be awarded fees pursuant to A.R.S. § 41-1481(J) only upon a finding that

25  the plaintiff's action was "frivolous, unreasonable or without foundation").

26  **III.   Attorney's Fees Award for State Law Claims**

27         Defendants also seek fees related to Plaintiff's various state law claims, including

28  false light/invasion of privacy, intentional or negligent infliction of emotional distress,

1    defamation, and intentional interference with a business relationship (Doc. 374, 7:8-10).

2    Defendant use the case of <u>Hewitt v. Joyner</u>, 940 F.2d 1561 (9th Cir. 1991), to argue that state

3    law claims based on a "common nucleus of operative fact with a substantial federal claim"

4    support an award of fees for those state claims (<u>Id.</u>). <u>See</u> <u>Hewitt</u>, 940 F.2d at 1571-72 ("Fee

5    award appropriate where plaintiff prevails on state law claim based on 'a common nucleus

6    of operative fact with a substantial federal claim'") (citation omitted).

7        While <u>Hewitt</u> speaks of a prevailing plaintiff, the Seventh Circuit has applied the rule

8    to a prevailing defendant in a § 1988 action. <u>Munson v. Milwaukee Bd. of Sch. Dirs.</u>, 969

9    F.2d 266, 271-72 (7th Cir. 1992). In that case, a school principal brought suit against the

10   board of school directors and two assistant superintendents, claiming that they had coerced

11   his resignation in violation of his civil rights under 42 U.S.C. § 1983. <u>Id.</u> at 267-68. The

12   principal also asserted state law claims for wrongful discharge, defamation, and invasion of

13   privacy. <u>Id.</u> at 268. The Seventh Circuit held that the principal could recover attorney's fees

14   for all of his claims under § 1988, despite the fact that some of the claims were based on state

15   law.[2] <u>Id.</u> at 272. "If a plaintiff can be awarded fees for work done on an *unsuccessful*

16   pendent state claim which is factually or legally related to a successful civil rights claim, then

17   defendants likewise should be entitled to fee awards for defending frivolous pendent claims

18   factually or legally related to frivolous civil rights claims." <u>Id.</u> (emphasis in original) The

19   court held that where the federal and pendent state law claims are legally or factually related,

20   they could be treated as one action in § 1988 fee awards. <u>Id.</u>

21       While this Seventh Circuit opinion is not binding on this Court, the reasoning

22   nevertheless is persuasive. Here, all of Plaintiff's state law claims arose from the same

23

24

25       [2]The Seventh Circuit pointed out that its treatment of pendent state claims was

26   consistent with the holdings of other circuits, including the Ninth Circuit. The Seventh
Circuit then cited to <u>Carreras v. City of Anaheim</u>, a Ninth Circuit case, which was also cited

27   for support by the court in <u>Hewitt</u>. <u>Carreras</u>, 768 F.2d 1039, 1050 (9th Cir. 1985) <u>overruled

28   on other grounds</u>, <u>Los Angeles Alliance for Survival v. City of L.A.</u>, 22 Cal. 4th 352 (2000).

course of conduct as his § 1983 and Title VII claims.[3]  Defendants' actions in asking Plaintiff to resign or be terminated gave rise not only to Plaintiff's § 1983 and Title VII claims, but also to his false light/invasion of privacy, intentional or negligent infliction of emotional distress, defamation, and intentional interference with a business relationship claims.  Thus, attorney's fees may properly be awarded to Defendants for work performed on any frivolous state law claims under § 1988.

## DISCUSSION

**I.     Defendants' Entitlement to Attorney's fees**

**A.     A.R.S. § 12-341.01(A)**

Defendants assert that Plaintiff brought a breach of contract claim (Claim 1) (Doc. 374, 4:20-21).  Defendants also argue that Plaintiff pled other claims which could not have been alleged in the absence of a contract, specifically, breach of the covenant of good faith and fair dealing (Claim 2) and violation of due process (Claim 9) (Id. 4:21-5:1).  Each of these three claims are supposedly "contract-based" and thus, fall within the provisions of A.R.S. § 12-341.01(A) (Id. 5:2-3).  Defendants' claimed fees for these "contract-based" claims total $66,375.45 (Id. 5:3; Ex. H).  Plaintiff does not dispute that these three claims — breach of contract, breach of the covenant of good faith and fair dealing, and due process property interest — fall within A.R.S. § 12-341.01(A) (Doc. 385).  Instead, Plaintiff emphasizes that there is no presumption of attorney's fees under the statute, but that the award is within the discretion of the court (Id. 5:12-16).  Plaintiff further claims that only $3,509.42 in fees are attributed to the contract claims, not $66,375.45 (Id. p.5, n.7).[4]

---

[3]The Seventh Circuit held that the same reasoning applies to both § 1988 and Title VII cases, since both statutes authorize fees awards to the "prevailing party."  See Munson, 969 F.2d at 1272 n.2; Hensley v. Eckerhart, 461 U.S. 424, 433 n.7(1983).

[4]This amount represents the fees incurred for the contract-based claims before the "general fees" were added.  The general fees are those fees applicable to all claims that were divided equally between Plaintiff's ten claims (Doc. 374, Ex. H).

The trial court can use the following factors in making its attorney's fee determination: (1) the merits of the claim or defense presented by the unsuccessful party; (2) whether the litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the results; (3) whether assessing fees against the unsuccessful party would cause an extreme hardship; (4) whether the successful party did not prevail with respect to all the relief sought; (5) the novelty of the legal question presented; (6) whether such claim or defense had previously been adjudicated in this jurisdiction; and (7) whether the award in any particular case would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees.  Associated Indem. Corp., 694 P.2d at 1184.  The Court now considers each of the seven factors in deciding whether to award attorney's fees under A.R.S. § 12-341.01(A).

First, the Court looks at the merits of Plaintiff's position throughout this case.  The Court finds that Plaintiff's breach of contract argument lacked merit because Plaintiff never signed a written employment contract with the Superior Court.  Rather, clear statutory language dictated Plaintiff's at-will status, as Commissioners served at the pleasure of the Presiding Judge.  See A.R.S. § 12-213.  Likewise, Plaintiff's due process argument was meritless since Plaintiff's at-will status meant he lacked a constitutionally protected property interest in continued employment.  FDIC v. Henderson, 940 F.2d 465, 477 (9th Cir. 1991) (citation omitted) (at-will employment contract does not create a protected property interest for due process purposes).  Finally, Plaintiff's claim for breach of the covenant of good faith and fair dealing is based on the existence of a valid contract.  The at-will status of Plaintiff's employment meant that no contract of employment terminable for good cause existed, and thus, Plaintiff's position was meritless.

As to the second factor, which considers whether the case could have been settled or avoided, Defendants assert that Plaintiff demanded $1.8 million to settle — "a patently unreasonable amount." (Doc. 388, 4:8-9).  Moreover, Defendants claim that "Plaintiff

expressed no interest" when Maricopa County Superior Court suggested the possibility of a "walkaway" settlement in September 2005 (Id. 4:10-11). Defense counsel's affidavit states that negative publicity to the court was threatened if the huge settlement amount was not paid, and that such threats were not conducive to settlement (Doc. 388, Ex. 1, Baker Aff. ¶ 9). In response, Plaintiff counters that repeated efforts were made to convince Defendants to engage in settlement discussions (Doc. 385, 6:15-17). Indeed, Plaintiff states that a motion was filed with the Court requesting that the real parties in interest be ordered to attend a settlement conference (Id. 6:19-20). The Court later denied Plaintiff's motion as moot due to its summary judgment ruling (Doc. 332). In light of the parties' representations, the Court cannot conclude that Defendants' efforts were superfluous in achieving the results in this case.

Third, the Court determines whether assessing attorney's fees against Plaintiff would cause him extreme hardship. Plaintiff contends that he is a person of limited financial resources. He currently works in the Arizona Attorney General's Office, and takes home approximately $52,000 per year (Doc. 385, 6:22, 7:1-2). After resigning from the Maricopa County Superior Court, Plaintiff states that he was out of work for almost a year, and had to cash in his state and judicial retirement funds to support his family (Doc. 385, Harris Aff. ¶¶ 5-6). Additionally, he is a father with sole legal custody of his three children, and pays spousal maintenance and child support of $1,314 per month (Doc. 385, 7:2-3; Harris Aff. ¶8). Moreover, he owes costs in the present case of $30,000, and also owes his divorce attorney $5,000 (Doc. 385, 7:5-6). Plaintiff has numerous outstanding credit card bills, and is responsible for the student loans of him and his ex-wife (Id. 7:6-7). As Plaintiff's only major asset is his home, he argues that attorney's fees of the magnitude requested in the present case would "devastate" him (Id. 7:3-4, 7).

Defendants argue that the mere fact that a losing party lacks substantial financial resources does not preclude a fee award (Doc. 374, 6:18-24). The Court agrees and finds the fact that Plaintiff may have limited resources, by itself, will not prevent an award of

attorney's fees.  Pettay v. Ins. Mktg. Servs, Inc., 752 P.2d 18, 21 (Ariz. Ct. App. 1987) ("While consideration must be given to the hardship that an award of fees would impose on a party that is only one of several factors to be considered by the trial court.") (citing Associated Indem. Corp., 694 P.2d at 1184)).  However, the Court will weigh the financial hardship to Plaintiff in determining the proper amount of any attorney fee award.

Fourth, the Court must consider whether Defendants prevailed with respect to all relief sought.  This factor weighs in favor of awarding attorney's fees as the Court granted summary judgment for Defendants on all of the contract claims (Doc. 332).

As to the fifth factor which addresses the novelty of the legal issues presented in this case, the parties differ in their views.  Defendants assert that far from being novel, Plaintiff's arguments were baseless and unfounded (Doc. 374, 6:9-10).  Plaintiff, however, claims that he submitted novel questions of law, and that the status of Arizona law is unsettled regarding the applicability of the Employment Protection Act to public employees (Doc. 385, 6:7-13). The Court finds that this case was not an especially novel one, as it involved typical contract issues.

Sixth, the Court looks at whether such claim or defense has previously been adjudicated in Arizona.  The Court finds that similar breach of contract issues have been litigated in Arizona, but not between these parties.

Finally, the Court must determine if an attorney's fee award in this case would deter others from bringing meritorious claims.  Defendants argue that there is no danger that a fee award will chill meritorious claims (Doc. 374, 6:11-12).  Rather, an award of fees would send the positive message that baseless and frivolous claims will result in the payment of attorney's fees (Id. 6:15-16).  See  Fulton Homes Corp. v. BBP Concrete, 155 P.3d 1090, 1096-97 (Ariz. Ct. App. 2007) (no chilling effect found by the court where contract claim should have been dismissed early on, fees requested were not exorbitant and award would encourage parties to thoroughly consider and investigate claims before filing them). Plaintiff counters that awarding fees in the present case would have a chilling effect (Doc. 385, 7:14-

25).  Plaintiff claims that the Maricopa County Superior Court handled his divorce, and that he currently makes his living arguing before that court (Id. 7:26-8:2).  As a result, he "remains absolutely intimidated by the courts." (Id. 7:3)  The Court agrees with Defendants, and finds that a fee award will not deter future plaintiffs from bringing meritorious and well-founded claims.

After considering the above factors, the Court finds that awarding Defendants attorney's fees is appropriate.  However, the award will be reduced on account of Plaintiff's financial hardship, as discussed *infra*.  See pp. 32-33.

## B.    42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k), and A.R.S. § 41-1481(J)

The Court must now determine Defendants' entitlement to attorney's fees under 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k), and A.R.S. § 41-1481(J) .  In so doing, the Court will examine each of Plaintiff's non-contract based claims individually, and assess whether Plaintiff's claims were "frivolous, unreasonable, or without foundation."

### 1.    Hostile Work Environment

Defendants argue that Plaintiff did not assert any arguments to support his sex and race-based hostile work environment claims, and that failure to oppose arguments evidences frivolity (Doc. 374, 7:21-22).  Defendants also claim that Plaintiff's sex-based hostile work environment claim was untimely, and that bringing such a clearly barred claim is considered frivolous (Id. 8:24-9:7).  Plaintiff argues in response that the cause of action accrued when the adverse action occurred and Plaintiff knew he was hurt (Doc. 385, 14:5-6).  Throughout the case, Plaintiff asserted that the hostile work environment claim should come in as evidence of discrimination, despite the fact that it arose just outside the 300 day limitations period (Id. 14:6-10).

A Title VII charge must be filed within 300 days of when the alleged unlawful employment practice occurred.  42 U.S.C. § 2000e-5(e)(1).  To establish a hostile work environment under Title VII, a plaintiff must show that the defendant's conduct was so

"'severe or pervasive'" as to "'alter the conditions of [his] employment and create an abusive working environment.'" <u>Montero v. AGCO Corp.</u>, 192 F.3d 856, 860 (9th Cir. 1999) (quoting <u>Meritor Savs. Bank, FSB v. Vinson</u>, 477 U.S. 57, 67 (1986)). "'An employer is liable under Title VII for conduct giving rise to a hostile environment where the employee proves (1) that he was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" <u>Kortan v. Cal. Youth Auth.</u>, 217 F.3d 1104, 1109-10 (9th Cir. 2000) (quoting <u>Pavon v. Swift Transp. Co.</u>, 192 F.3d 902, 908 (9th Cir. 1999)).

Due to the clear statutory mandate that a Title VII claim is barred if not filed within 300 days of the last discriminatory act, the Court finds that Plaintiff's sex-based hostile work environment claim is "frivolous, unreasonable or without foundation." While Plaintiff claimed that the alleged misconduct took place between May and December of 2000, he did not file an EEOC charge until November 9, 2001 (Doc. 332, 12:10-13). Since the charge was not filed within 300 days of the last alleged discriminatory act, Plaintiff's claim was barred, and no facts were offered that any acts occurred after December 2000 (<u>Id.</u>).

Furthermore, with regard to Plaintiff's race-based hostile work environment claim, Plaintiff never alleged any facts suggesting that he was subjected to frequent, severe, humiliating or threatening conduct based on his race (Doc. 3, ¶¶ 43-51). Neither did Plaintiff allege that any racial comments were made during the term of his employment or during the subsequent investigation (<u>Id.</u>). Defendants argue that this failure to prove the prerequisites for a racially hostile work environment warrants an award of attorney's fees for this claim (Doc. 374, 9:19-24). The Court agrees, and finds that Plaintiff's race-based hostile work environment claim was frivolous.

### 2. Race Discrimination

#### a. Disparate Impact

As to the disparate impact claim, Defendants contend that Plaintiff ignored the legal requirements for his claims, which demonstrates frivolity (Doc. 374, 8:18-22).  They assert that Plaintiff did not even attempt to identify a facially neutral practice having a disparate impact on a protected group, nor did Plaintiff offer any statistical evidence whatsoever (Id.).

To make out a prima facie claim of disparate impact, a plaintiff must demonstrate (1) the occurrence of certain outwardly neutral employment practices, and (2) a significantly adverse or disproportionate impact on persons of a particular [protected class] produced by the employer's facially neutral acts or practices.  See Katz v. Regents of the Univ. of Cal., 229 F.3d 831, 835 (9th Cir. 2000).  In his Amended Complaint, Plaintiff did not identify a facially neutral practice of Defendants that allegedly had a disparate impact on a protected group (Doc. 3, ¶¶ 43-51, 52-65).  In light of Plaintiff's failure to allege any factual basis supporting a disparate impact claim, the Court finds this claim frivolous.

### b.  Disparate Treatment

Defendants point out that while the Court at summary judgment found that Plaintiff had barely established a prima face case of disparate treatment with regards to race, it found that Plaintiff's pretext evidence was insufficient to create a genuine issue of material fact (Doc. 374, 10:3-8).

A person suffers disparate treatment in his employment "when he or she is 'singled out and treated less favorably than others similarly situated on account of race.'" McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1121 (9th Cir. 2004) (internal quotation marks omitted) (quoting Jauregui v. City of Glendale, 852 F.2d 1128, 1134 (9th Cir. 1988)).  To establish a prima facie case under Title VII, a plaintiff must offer proof that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  If a plaintiff establishes a prima facie case, then the defendant has the

burden of producing a legitimate nondiscriminatory reason for its employment decision. Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).  If the defendant meets this burden, the plaintiff must demonstrate that the defendant's reason is a pretext for discrimination – i.e., the reason is false or the true reason was a discriminatory one.  Id.

Plaintiff alleged (1) that he is African-American, a protected class under Title VII; (2) that he was qualified for his position; and (3) that he was given the choice to resign or be terminated, an adverse employment action (Doc. 3, ¶¶ 10-13). McDonnell Douglas, 411 U.S. at 802.  Plaintiff also alleged that Defendants' treatment of him differed from its treatment of similarly qualified male Caucasian Commissioners.  Specifically, Defendants never disciplined white male judicial officers for "wasting County resources," refusing to accept search warrant requests, or failing to pay cell phone bills (Doc. 3, ¶¶ 55-59).  Furthermore, Defendants never investigated allegations of sexual harassment against white male judicial officers (Id. ¶¶ 60-61).

Given the initial filing, Plaintiff's disparate treatment claim was not frivolous.  While Plaintiff's argument was not sufficient to defeat summary judgment, this does not mean that the claim was groundless or without merit.  Plaintiff presented enough evidence to establish a prima facie case of disparate treatment based upon race, and to shift the burden to Defendants to offer a legitimate, nondiscriminatory reason for asking Plaintiff to resign or be terminated.  While Plaintiff's attempt to show that Defendants' proffered reason was pretextual was ultimately unsuccessful, Plaintiff had some basis on which to theorize his disparate treatment claim.

### c.    Retaliation

As to Plaintiff's retaliation claim, Defendants contend that Plaintiff failed to even argue the elements of the claim until his Reply (Doc. 374, 10:22-23).  Furthermore, Plaintiff presented no evidence to support the causation element, other than temporal proximity (Id. 10:23-26).

1
2
3
4
5
6
7
8
9

To establish a retaliation claim under Title VII, a plaintiff must show that (1) he was involved in a protected activity, (2) an adverse employment action was taken against him, and (3) there was a causal link between the protected activity and the adverse employment action. Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 506 (9th Cir. 2000) (citing Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987)). If a plaintiff has shown a prima facie retaliation claim, the burden shifts to the defendant to furnish legitimate reasons for the adverse employment action. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000). If the defendant meets that burden, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive. Id.

10
11
12
13
14
15

Despite Defendants' arguments to the contrary, the Court does not find this claim frivolous as proximity in time between the protected activity and the adverse action may support an inference of causation in some cases. Passantino, 212 F.3d at 507. In this particular case, the placement of Plaintiff on administrative leave prior to the protected activity led the Court to find that causation had not been established, but that does not make Plaintiff's claim meritless.

16

### 3.    False Light/Invasion of Privacy

17
18
19
20
21
22

Defendants argue that Plaintiff's false light claim was frivolous given existing precedent that public officials possessed no privacy interest in matters relating to their employment (Doc. 374, 12:14-20). Moreover, Plaintiff's failure to identify any publication made by Defendants was a defect because a false light claim necessitates proof of publication to the public (Id.).

23
24
25
26
27
28

Under Arizona law, a claim for false light invasion of privacy exists where a person who gives publicity to a matter concerning another person (1) places the other person before the public in a false light that would be highly offensive to a reasonable person; and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. Hart v. Seven Resorts Inc., 947 P.2d 846, 854 (Ariz. Ct. App. 1997).

The Court finds that this claim is frivolous because as a limited purpose public figure, Plaintiff had no privacy interest in the allegations against him. The Arizona Supreme Court has held that where a person assumes a role of public prominence in regards to a matter of public concern, he is considered a limited purpose public figure. <u>Dombey v. Phoenix Newspapers</u>, 724 P.2d 562, 569-71 (Ariz. 1986). Following the Arizona Supreme Court in <u>Dombey</u>, several Arizona cases have adopted the public official test set forth in the United States Supreme Court opinion, <u>Rosenblatt v. Baer</u>, 383 U.S. 75 (1966): "[w]here a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees," he or she is a public official and "the New York Times malice standards apply." <u>Id.</u> at 86; <u>see e.g.,</u> <u>Turner v. Devlin</u>, 848 P.2d 286, 288-90 (Ariz. 1993) (en banc) (statements about conduct of a police officer "involve matters of public concern"); <u>Selby v. Savard</u>, 655 P.2d 342, 344-45 (Ariz. 1982) (law enforcement official at time publication was made was "public official").

In the present case, Plaintiff was employed by a public entity, the Maricopa County Superior Court, as a Hearing Officer. In his role as a judicial officer, Plaintiff regularly made decisions that directly impacted the public at large. By virtue of this position, Plaintiff was clearly a public figure under the caselaw. Equally clear under Arizona caselaw is that "a plaintiff cannot sue for false light invasion of privacy if he or she is a public official *and* the publication relates to performance of his or her public life or duties." <u>Godbehere</u>, 783 P.2d at 789 (emphasis in original). Furthermore, "privacy rights are absent or limited 'in connection with the life of a person in whom the public has a rightful interest, [or] where the information would be of public benefit.'" <u>Id.</u> (alteration in original) (quoting <u>Reed v. Real Detective Pub. Co.</u>, 162 P.2d 133, 138 (Ariz. 1945)). Since the allegations against Plaintiff related to the performance of his duties as a Hearing Officer, and this information would be beneficial to the public, Plaintiff should have known at the outset of the case that he had no

privacy interest in the allegations made against him.   Therefore, the Court finds that Plaintiff's false light claim is frivolous.

### 4. Wrongful Termination

In Count Six of the Amended Complaint, Plaintiff alleges that "Defendants breached the public policy of the State of Arizona by terminating Commissioner Harris on account of his sex and race."  (Doc. 3, ¶ 74). Plaintiff states that Defendants' conduct is in violation of the Arizona Civil Rights Act and the Civil Rights Act of 1964 (Id.).

It is the law in Arizona that a wrongful termination claim is appropriate only when an employment relationship is terminated in violation of a state statute and the statute fails to provide a remedy to the employee for violations of the statute.  See A.R.S. § 23-1501(3)(b); see also Taylor v. Graham County Chamber of Commerce, 33 P.3d 518 (Ariz. Ct. App. 2001); Galati v. Am. W. Airlines, Inc., 69 P.3d 1011 (Ariz. Ct. App. 2003).  Based upon this legal precedent, Plaintiff could not use an alleged violation of Title VII to support a wrongful termination claim because Title VII is not a state statute.  Plaintiff's claim of an Arizona Civil Rights Act violation is similarly insufficient because a statutory remedy is clearly available.  The Arizona Employment Protection Act expressly identifies the Arizona Civil Rights Act as a statute containing an exclusive remedy.  See A.R.S. § 23-1501(3)(b)(i).  As such, Plaintiff did not set forth any violation of a state statute that would support a viable claim for wrongful termination, and thus, his claim is found to be frivolous.

### 5. Intentional and Negligent Infliction of Emotional Distress

#### a. Intentional Infliction of Emotional Distress ("IIED")

In regards to this claim, Defendants argue that Plaintiff knew, or should have known, that he had no special facts that would place him into that rare class of employment cases giving rise to an IIED claim (Doc. 374, 13:16-25).

In Arizona, three elements are necessary to establish an IIED claim: (1) the employer's conduct must be "extreme and outrageous"; (2) the employer must either intend

to cause emotional distress or recklessly disregard the near certainty that distress will result from his conduct; and (3) the employer's conduct must have caused severe emotional distress. Lucchesi v. Stimmell, 716 P.2d 1013, 1015-16 (Ariz. 1986) (en banc) (citing Watts v. Golden Age Nursing Home, 619 P.2d 1032, 1035 (1980)); Ford v. Revlon, Inc., 734 P.2d 580, 585 (Ariz. 1987) (citing Watts). To recover for this tort, a plaintiff must establish that the defendant's conduct was "'so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" Johnson v. McDonald, 3 P.3d 1075, 1080 (Ariz. Ct. App. 1999) (quoting Cluff v. Farmers Ins. Exch., 460 P.2d 666, 668 (Ariz. Ct. App. 1969)). Arizona courts have recognized the difficulty of bringing IIED claims in the employment context. "'It is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.'" Mintz v. Bell Atlantic Sys. Leasing Int'l, Inc., 905 P.2d 559, 564 (Ariz. Ct. App. 1995) (quoting Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988)).

In addition to this difficulty, Plaintiff's facts did not place him into that rare class of cases where an IIED claim does arise. Plaintiff argues in its responsive motion that it was not frivolous to argue that Ford v. Revlon applied, and that Plaintiff's allegations of emotional distress mimic that case (Doc. 385, 17:3-12). However, the Court finds that Plaintiff's claims are not nearly as egregious as those found in Ford. In that case, the employer ignored repeated claims of sexual harassment by a distraught employee. 734 P.2d at 582-83. Her supervisor stalked her at work events, stated that "I am going to f–k you," and physically assaulted her by placing her in a chokehold and then touching her crotch, breasts, and stomach. Id. at 581-82. Nothing was done, even after the employee told the employer she was "collapsing emotionally and physically." Id. at 583. The employee eventually attempted suicide due to the egregiousness of the harassment. Id. The Supreme Court of

Arizona determined that such conduct was sufficiently "extreme and outrageous" for an IIED claim. Id. at 585.

Plaintiff's alleges in his Amended Complaint that he was falsely accused of sexual harassment, and that such allegations tarnished his reputation (Doc. 3, ¶¶ 88-91). Despite Plaintiff's arguments to the contrary, this conduct does not compare to that in Ford and was not sufficient to bring an IIED claim. Moreover, "Arizona courts have typically found false accusations alone not enough to constitute an intentional infliction of emotional distress claim." Bodett v. CoxCom, Inc., 366 F.3d 736, 747 (9th Cir. 2004). In light of this Arizona precedent, the Court finds that Plaintiff knew or should have known that his IIED claim was frivolous.

### b.    Negligent Infliction of Emotional Distress ("NIED")

Defendants argue that Plaintiff "completely ignored" the bodily harm requirement for his NIED claim, as well as the requirement that Defendants' conduct must give rise to an unreasonable risk of causing emotional distress (Doc. 374, 14:1-4).

In Arizona, three elements are necessary to establish the tort of NIED: (1) the defendant unintentionally causes emotional distress to another that results in illness or bodily harm; (2) the defendant should have realized that his conduct involved an unreasonable risk of causing such emotional distress, otherwise than by knowledge of the harm or peril of a third person; and (3) the defendant, from facts known to him, should have realized that the distress, if it were caused, might result in illness or bodily harm. See Keck v. Jackson, 593 P.2d 668, 669 (Ariz. 1979) (citing Restatement (Second) of Torts § 313); Ball v. Prentice, 781 P.2d 628, 630 n.1 (Ariz. Ct. App. 1989).

After considering this claim, the Court finds that it is frivolous. Arizona caselaw is clear that a NIED claim requires a showing of bodily harm, and that transitory physical phenomena are insufficient to support such a claim. See Keck, 593 P.2d at 669-70. In Plaintiff's Amended Complaint, he alleges no physical or bodily injuries at all, other than general claims of "severe emotional distress" arising from allegations of sexual harassment

against him (Doc. 3, ¶¶ 83, 90-91).  The lack of bodily injury claimed by Plaintiff meant he should have known that his claim was frivolous from the outset of the litigation.

### 6.    Defamation

Defendants assert that the defamation claim is baseless as well due to Plaintiff's failure to identify any publication Defendants made (Doc. 374, 12:14-15).

In Arizona, the elements of a defamation claim involving a public figure are: (1) a false statement concerning the plaintiff; (2) the statement was defamatory; (3) the statement was published to a third party; (4) the defendant made the statement with actual malice; and (5) the plaintiff was damaged as a result of the statement.  Morris v. Warner, 770 P.2d 359, 366 (Ariz. Ct. App. 1988).  Speech about a public figure, such as Plaintiff, can be the proper subject of a defamation claim "when made with 'actual malice' – that is, with knowledge that it was false or with reckless disregard of whether it was false or not."  Citizen Publ'g Co. v. Miller, 115 P.3d 107, 111 n.2 (Ariz. 2005) (quoting N.Y. Times v. Sullivan, 376 U.S. 254, 279-80 (1964)).

The Court finds that this claim was not frivolous at the outset of the litigation. Plaintiff alleged that the false and defamatory statement that he had been fired for sexual harassment was published to prospective employers, and as a result, Plaintiff was harmed (Doc. 3, ¶¶ 92-105).  Despite lacking absolute merit at the summary judgment stage, the Court cannot find that the defamation claim was "frivolous, unreasonable, or without foundation" when the case began.

### 7.    Equal Protection

Defendants contend that Plaintiff avoided undertaking any specific analysis of his equal protection claim, and indeed, barely mentioned it in his summary judgment motion (Doc. 374, 8:6-10).  Defendants argue that fees have been awarded where a plaintiff advanced a constitutional claim without setting out any theory about how the constitutional violation occurred (Id.).  A violation of equal protection requires proof that the defendant

intentionally acted in a discriminatory manner.  Henderson, 940 F.2d at 471.  Disparate treatment under Title VII and equal protection claims are analyzed similarly.  See Bator v. State of Haw., 39 F.3d 1021, 1028 n.7 (9th Cir. 1994).  In assessing attorney's fees, the Court finds that Plaintiff's equal protection claim is not frivolous because, as discussed above, Plaintiff brought forth a reasonable disparate treatment claim.  See pp. 12-13.

### 8.   Tortious Interference with Contract

Defendants argue that Plaintiff presented little evidence of Defendants' "interference," such as information given to potential employers that was detrimental to an employment relationship (Doc. 374, 12:21-13:2).  Additionally, Defendants assert that "[Plaintiff] lacked any evidence that he had a reasonable expectation of employment with any employer to whom negative information about him was supposedly supplied."  (Id. 13:2-6)  Plaintiff responds that emails from Betsy Jobes showed tortious interference, as well as Plaintiff's testimony that he was removed from his position as a Judge Pro Tem with the City of Glendale (Doc. 385, 16:25, 28, 17:1).  Additionally, there was indirect evidence, where Councilman Carroll found no record of Plaintiff's application to the City of Avondale despite the fact that Carroll had interviewed Plaintiff previously (Id. 16:26-28).

To establish a claim for intentional interference with a business relationship, a plaintiff must prove: (1) a contract or business expectancy between the plaintiff and a third party; (2) knowledge by the defendant that such contract or expectancy exists; (3) intentional interference by the defendant that caused the third party to breach the contract or expectancy; (4) proof that the defendant acted improperly; and (5) proof that the plaintiff was damaged.  See, e.g., Pasco Indus., Inc. v. Talco Recycling, Inc., 985 P.2d 535, 548 (Ariz. Ct. App. 1998).

In his Amended Complaint, Plaintiff alleged that Defendants interfered with a business relationship subsequent to Plaintiff's termination by communicating allegedly false and prejudicial information to prospective employers. (Doc. 3, ¶¶ 95-96, 98-99).  As a result, the Court finds that this claim is not frivolous.

1

### C.    Recovery of Fees to Bring Motion for Attorney's Fees

2      Defendants also request attorney's fees related to bringing the present motion, and

3   Plaintiff does not object.  Defendants have not given the Court a specific amount of fees they

4   seek, but instead, merely request a "reasonable fee."

5      The Ninth Circuit has held that work performed on a motion for attorney's fees under

6   § 1988(b) is compensable.  McGrath v. County of Nev., 67 F.3d 248, 253 (9th Cir. 1995)

7   (citing Clark v. City of L.A., 803 F.2d 987, 992 (9th Cir. 1986)).  Similarly, time devoted to

8   litigating the propriety of a fee award is compensable under Title VII's attorneys' fee

9   provision, 42 U.S.C. §2000e-5(k).  Manhart v. City of L.A., Dept. of Water and Power, 652

10  F.2d 904, 909 (9th Cir. 1981), vacated on other grounds, 461 U.S. 951 (1983) ("It would be

11  inconsistent to dilute an award of fees by refusing to compensate an attorney for time spent

12  to establish a reasonable fee.") (citing Lund v. Affleck, 587 F.2d 75, 77 (1st Cir. 1978))).

13      Arizona law also supports the recovery of attorney's fees incurred in preparing a fee

14  application.  See Gametech Int'l Inc. v. Trend Gaming Sys., L.L.C., 380 F. Supp. 2d 1084,

15  1101 (D. Ariz. 2005); Schweiger v. China Doll Rest., Inc., 673 P.2d 927 (Ariz. Ct. App.

16  1983).  In China Doll, the Arizona Court of Appeals stated that a prevailing party may

17  recover a reasonable attorney's fees for "every item of service which . . . would have been

18  undertaken by a reasonable and prudent lawyer to advance or protect his client's interest . .."

19  673 P.2d at 932.  The court then offered examples of the types of services which might be

20  included in a fee application, including time spent preparing post-decision motions.  Id.  A

21  motion for attorney's fees is a post-decision motion that requires a "reasonable and prudent

22  lawyer" to spend considerable time preparing.  Gametech, 380 F. Supp. 2d at 1101.

23  Including this reasonable preparation time in an attorney's fee award to the prevailing party

24  furthers the purpose of awarding such fees and does not provide a double recovery.  Id.

25  Based upon the existing federal and state law precedent, the Court concludes that Defendants

26  can recover fees for bringing the attorney's fee motion.

27

28

1

**D.     Conclusion**

2
3
4
5
6
7
8
9
10

In conclusion, the Court finds that Defendants are entitled to attorney's fees on their contract-based claims, including breach of contract, breach of the covenant of good faith and fair dealing, and due process property interest.  Additionally, the Court finds that Plaintiff's claims of hostile work environment, disparate impact, false light/invasion of privacy, wrongful termination, and emotional distress (intentional and negligent) are frivolous, and thus, an award of attorney's fees is appropriate as to these claims.  However, Plaintiff's claims of disparate treatment, retaliation, equal protection, defamation, and tortious interference are found not to be frivolous, and no fees will be awarded.  Finally, the Court finds that Defendants are entitled to fees related to bringing the present motion.

11

**II.     Amount of Defendants' Reasonable Attorney's Fees**

12
13
14
15
16
17
18
19
20
21
22

In Arizona, "'the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  Sanborn v. Brooker & Wake Prop. Mgmt., Inc., 874 P.2d 982, 987 (Ariz. Ct. App. 1994) (citing Timmons v. Tucson, 830 P.2d 871, 878 (Ariz. Ct. App. 1991)).  This lodestar method is "the centerpiece of attorney's fee awards."  Blanchard v. Bergeron, 489 U.S. 87, 94 (1989).  The party seeking a fee award should submit evidence supporting the rate claimed and hours expended.  Hensley, 461 U.S. at 433.  Where a party fails to adequately document its hours, the district court may reduce the award.  Id.  An award may also be reduced for hours not "reasonably expended."  As the United States Supreme Court explained in Hensley,

23
24

> Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.

25
26
27

Id. at 434.  This "billing judgment" by counsel is important in determining fees because hours should not be charged to an adversary that could not be charged to a client.  Id.

28

Determination of a reasonable attorney's fee award is a two-step process. First, the Court calculates the lodestar figure by multiplying the number of hours reasonably expended by a reasonable hourly rate. Second, the Court decides whether to enhance or reduce the lodestar figure based on its evaluation of the factors enunciated in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67 (9th Cir. 1975) that have not been subsumed in the calculation of the lodestar figure. <u>Fischer v. SJB P.D. Inc.</u>, 214 F.3d 1115, 1119 (9th Cir. 2000).

With that framework in mind, the Court now determines a reasonable attorney's fee award in this case.[5]

## A.    Calculation of the Lodestar Figure

The Court begins its analysis with a calculation of the lodestar figure. To calculate the lodestar figure, the Court takes the number of hours reasonably expended and multiplies that number by a reasonable hourly rate.

## 1.    Reasonable Hourly Rate

Defense counsel has submitted information regarding their hourly rates: $135 for partners, $115 for associates, and $65 for paralegals (Doc. 374, 16:2-4; Ex. B, Baker Aff. ¶ 7).[6] Defendants assert that such rates are comparable or lower than the prevailing community

---

[5]Plaintiff argues that Defendants have not submitted a fee agreement with their resubmitted Motion for Attorney's Fees as required by Local Rule 54.2 (Doc. 385, 8:25-26). The Agreement for Outside Counsel, attached to Defendants' motion as Exhibit D, only applies to cases during the year 2003 (<u>Id.</u> 9:3, Doc. 374, Ex. D). However, Plaintiff claims, the billings demonstrate the matter was assigned in 2002 (Doc. 385, 9:4). Furthermore, there is no assignment to Green & Baker shown (<u>Id.</u> 9:5-6).

Local Rule 54.2 requires that a complete copy of any fee agreement must be attached to the memorandum in support of the award of attorney's fees and non-taxable expenses. LRCiv 54.2(d)(2). Although Plaintiff is correct that the Agreement for Outside Counsel attached to Defendants' resubmitted motion is for the year 2003 only (Doc. 374, Ex. D), Defendants attached agreements for the years 2002 through 2008 with their Reply (Doc. 388, Ex. G). The Court notes, however, that Defendants should have attached all of their fee agreements to their original motion, pursuant to the local rule.

[6]Plaintiff claims that no affidavits, resumes, or qualifications are given for the four paralegals and seven associates billed in this case (Doc. 385, 9:20-22). Defendants respond

- 23 -

rate, and reference a 2007 Arizona district court case that involved a § 1983 claim where hourly rates between $135 and $175 were considered reasonable (Doc. 374, 15:15-20 & n.7).[7]  Plaintiff does not raise any objections to the hourly rates charged by Defendants, and indeed, states that "the hourly rate appears reasonable."  (Doc. 385, 9:8).  The Court finds that the hourly rates are reasonable for this type of work in the Phoenix area, especially given the attorneys' level of experience.

Nevertheless, the Court must examine Defendants' practice of apportioning general fees amongst Plaintiff's claims.  Defendants have broken their fee request down to assign certain billing entries to specific claims, where such an allocation was possible (Doc. 374, Ex. E).  Where it was not, the fees were assigned to a general fee category (Id.).  As the general fees amounted to $251,464.10, Defendants apportioned $25,146.41, or ten percent, of the general fees to each of Plaintiff's ten claims (Id.).  In Cairns v. Franklin Mint Co., the Ninth Circuit upheld an award of attorney's fees where fees not attributable to any one claim

_____

that counsel's affidavit details the personnel used on the case, their positions, dates of admission, and qualifications (Doc. 388, 9:9-16).  According to Defendants, Local Rule 54.2(d)(4)(A) does not require that resumes be submitted for each professional for whom fees are claimed (Id.).

Local Rule 54.2 requires that the supporting memorandum accompanying the motion for attorney's fees include an affidavit of moving counsel.  This affidavit must give a "brief description of the relevant qualifications, experience and case-related contributions of each attorney for whom fees are claimed."  LRCiv 54.2(d)(4)(A).  Defendants are correct that no resume is required to be submitted, provided that a short description of the attorneys' qualifications is given.  In accordance with Local Rule 54.2, defense counsel submitted an affidavit in which she provided the names of all associates who assisted on the case, along with their respective dates of admission to the Arizona Bar (Doc. 374, Ex. B, Baker Aff. ¶ 4).  Defense counsel also indicated that these associates were "primarily responsible for legal research and drafting motions."  (Id.)  The Court finds that this is sufficient under the local rule.

[7] See Lyon v. Estrella Foothills High Sch., No. CV 03-2306-PHX-JAT, 2007 WL 707124 (March 6, 2007).

was allocated by the district court between the claims.[8] 292 F.3d 1139, 1157 (9th Cir. 2002). While the fees were not allocated equally between the claims in Cairns, the Court finds that Defendants' equal allocation between Plaintiff's ten claims is appropriate in this case.

## 2.    Reasonable Number of Hours

Defendants claim 2,656.41 total hours of attorney and staff time for this case (Doc. 374, Ex. B, Baker Aff. ¶ 9). Plaintiff, however, has raised a number of objections to the reasonableness of the number of hours claimed by Defendants, which the Court will examine in turn.

First, Plaintiff contends that the fee request in this case far exceeds requests by the State in other cases (Doc. 385, 9:8-10). In response, Defendants claim that any attempt to compare the billing in the present case with billing in other State cases is pointless because each case is unique and requires different work (Doc. 388, 11:3-10; Ex. 1, Baker Aff. ¶ 18). The Court agrees with Defendants that the fee requests in other cases involving the State are

---

[8] In Cairns, the plaintiff brought claims under the Lanham Act for false endorsement, false advertisement, and trademark dilution. 292 F.3d at 1144. Plaintiff also alleged violations of California's post-mortem right of publicity statute as well as unfair competition and false and misleading advertisement under the California Business and Professions Code. Id. After affirming the district court's finding that the plaintiff was entitled to attorney's fees on the false advertisement, trademark dilution, and right of publicity claims, the Ninth Circuit turned to the issue of the proper amount of those fees. Id. at 1156. In the district court proceedings, the defendants had allocated certain hours exclusively to either the right of publicity claim or the trademark claims. Cairns v. Franklin Mint Co., 115 F. Supp. 2d 1185,1188 (C.D. Cal. 2000). Other hours not allocated to either claim were allocated half to the right of publicity claim, and half to the trademark claims. Id. The district court changed the allocation of these "general" fees to twenty-five percent to the right of publicity claim, and seventy-five percent to the trademark claims, due to the right of publicity claim being on interlocutory appeal while the trademark claims were litigated. Id. On appeal, the Ninth Circuit upheld the district court's apportionment of these general fees that were not attributable to either the right of publicity or trademark claims, and affirmed the district court's award of attorney's fees. Cairns, 292 F.3d at 1157-58. While this case is a Lanham Act case, rather than one brought under the civil rights statutes, the Court finds that the apportionment principle should apply in a similar manner.

not relevant.  The Court has no way to know the particular facts of the other cases, and what special considerations may have led to the amount of the fees.  See Fantasy Inc. v. Fogerty, 94 F.3d 553, 561 (9th Cir. 1996) ("[C]omparisons to fee awards in other cases are largely irrelevant, and certainty not determinative, inasmuch as the reasonableness of a particular fee award depends on a case-by-case analysis.").

Second, Plaintiff claims that a prevailing party is only entitled to attorney's fees for actions that would have been undertaken by a "reasonable and prudent lawyer to advance or protect his client's interest." (Doc. 385, 9:23-25)  According to Plaintiff, a reasonable and prudent attorney would not have undertaken the following actions: interrogating Plaintiff's wife, obtaining the wife's affidavit, pursuing Plaintiff's divorce file, and failing to schedule a settlement conference or talk with anybody at the Arizona Supreme Court (Id. 10:2-12).  Defendants counter that the information gathered from Plaintiff's wife and his divorce file produced relevant evidence (Doc. 388, 9: 19-23).[9]  The Court will not second-guess what evidence Defendants felt was necessary to obtain during discovery to prove their case.  Furthermore, Defendants' failure to agree to a settlement conference may have been a result of Plaintiff's seemingly high demand for $1.8 million.

Third, Plaintiff argues that defense counsel's deposition style caused unnecessary expense (Doc. 385, 10:14-23).  Specifically, Plaintiff asserts that "The depositions were all increased in length by [defense counsel's] style which is to testify herself and then ask a non-related question.  She constantly gave speeches, argued, made accusations, and advised opposing counsel." (Doc. 385, McCracken Aff. ¶ 25).  In her affidavit, defense counsel denies the allegations and states that Defendants were able to secure important admissions at the depositions that demonstrated that Plaintiff's claims were meritless (Doc. 388, Ex. 1, Baker Aff. ¶ 13).  After reviewing the deposition excerpts provided by Plaintiff, the Court

_____

[9]One of the relevant pieces of information that Defendants claim to have gleaned is that "Plaintiff lied to Judge Campbell by arguing he did not engage in misconduct at the court because he would supposedly no sooner violate his vows to the Court than his marital vows [as it turns out, he violated both]."  (Doc. 388, 9:23-10:1).

finds that the conduct exhibited by counsel for both sides was less than professional, and thus, will not deny Defendants' fees on this basis.

Fourth, Plaintiff asserts that the attorney time billed by Defendants far exceeds that of Plaintiff's counsel for this case (Doc. 385, 10:25-26). Defendants counter that Plaintiff's "shotgun argument style regarding irrelevant matters" resulted in the greater expenditure of time by Defendants (Doc. 388, 10:17-19). Moreover, Defendants point out that neither Glen Carter or Mr. Harris tracked their hours, and thus, there is no true record of the time spent by Plaintiff's counsel and staff (Doc. 388, p. 10, n.14; Ex. 1, Baker Aff. ¶ 11).[10] During the course of the litigation, Plaintiff's counsel also changed the fee agreement from a fixed hourly rate to a contingency fee (Doc. 388, p.10, n.14; Doc. 385, McCracken Aff. ¶ 23). While the Court recognizes the disparity in hours between the parties, the Court does not find this a reason to deny the award of fees. The greater number of hours spent by Defendants was likely due to Plaintiff bringing ten claims for relief, many of which were meritless, including a hostile work environment claim that was clearly time-barred. Also, given that neither Glen Carter or Vernon Harris' work was included in Plaintiff counsel's total hours, the disparity may in fact be less.

Fifth, Plaintiff claims that emails and calls listed in Defendants' billing have the subject matter redacted making it difficult to identify who was contacted and the content of the communication (Doc. 385, McCracken Aff. ¶ 34). Such redactions supposedly account for 68 hours. Defendants respond that an attorney is not required to reveal client confidences in the billing entries (Doc. 388, 10:8-10).

Local Rule 54.2(e) provides guidance to attorneys regarding their description of services rendered in their billing. The rule states that in describing services, "counsel should be sensitive to matters giving rise to issues associated with the attorney-client privilege and

---

[10]Glen Carter served as co-counsel with Cheri McCracken in this case (Doc. 385, McCracken Aff. ¶ 9-10). At the time of this case, Carter was a partner at Jennings, Strouss & Salmon in Phoenix, Arizona, and primarily did employment defense work (Id.). All of his representation was pro bono, and thus, his hours are estimated at 150 (Id. ¶ 24).

attorney work-product doctrine, but must nevertheless furnish an adequate nonprivileged description of the services in question." LRCiv 54.2(e)(2). The rules than gives various examples of the kind of specificity required in billing entries. For example, for telephone calls, the time entry must identify all participants and the reason for the telephone call. LRCiv 54.2(e)(2)(A). In numerous entries in the present case, Defendants have redacted the subject matter of emails and telephone calls so that all that remains is the name of the person contacted; i.e. "Email to Westover." This is not sufficient under the local rules. Defendants needed to provide a "nonprivileged description" of the reason for the call or email in their billing. Thus, the Court will reduce Defendants' billable hours by 53.7 hours.[11]

After consideration of Plaintiff's objections, the Court finds that the number of hours spent by each attorney are generally appropriate and reasonable based upon the complexity and progression of the case. However, certain reductions will be taken as discussed in the next section.

### 3. Fee Reductions

First, a reduction of 53.7 hours will be taken due to the improper redactions discussed above. See pp. 27-28. Taking into account the attorneys who billed those hours, as well as their respective hourly rates, the Court reduces the total amount of fees awarded by $6,193.50.

Second, as to the civil rights claims, the Court will not award fees to Defendants for disparate impact. Count 2 of Plaintiff's Amended Complaint for race discrimination can be broken down into disparate impact, disparate treatment, and retaliation claims (Doc. 3). As discussed previously, the Court finds that the disparate impact claim was frivolous, while the disparate treatment and retaliation ones were not. See pp. 12-14. Since the quantum of proof

---

[11]Upon reviewing the redacted entries objected to by Plaintiff, the Court finds that most lack the specificity required by the local rules, particularly as it pertains to telephone calls and emails (Doc. 374, Ex. C). However, entries on December 1, 2, 3,4, and 6 of 2004, as well as January 5, and April 12 of 2005 relating to the review of personnel files are sufficiently detailed and were not factored into the Court's calculation.

is essentially the same for all of them, the Court will not award any fees for Plaintiff's race discrimination claim.

In conclusion, Defendants cannot recover the total amount of fees requested. As detailed above, Defendants are entitled to attorney's fees on the contract-based claims, but at a reduced amount. See p. 10. Moreover, the Court will award fees only for Plaintiff's hostile work environment, false light, and wrongful termination claims.

Defendants have provided the Court a separate calculation of fees for each of Plaintiff's claims (Doc. 374, Ex. E). Using this breakdown, the Court finds that the total fees awarded is $173,708.34.[12] The Court will add $3,500 as a reasonable fee for bringing the present motion,[13] raising the total to $177,208.34. Factoring in the reduction of $6,193.50 for the improper redactions, the Court adopts $171,104.84, as the final lodestar figure.

## B.    Consideration of the Reasonableness Factors

There is a "strong presumption" that the lodestar amount represents the "reasonable" fee. Pennsylvania v. Del. Valley Citizens' Council, 478 U.S. 546, 565 (1986). The lodestar figure should be adjusted or enhanced only in rare or exceptional circumstances, and a fee applicant bears "the burden of showing that such an adjustment is necessary to the determination of a reasonable fee." Blum v. Stenson, 465 U.S. 886, 898 (1984).

With the lodestar figure established, the Court now considers the factors used to assess the reasonableness of an attorney's fee award, as delineated by the United States Supreme Court in Blanchard, 489 U.S. at 87 (1989) and adopted by the Ninth Circuit in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975): (1) the time and labor required; (2) the

---

[12] This fee total was reached by adding the following amounts: $66,375.45 (contract-based claims) + $28,360.71 (hostile work environment) + $28,002.01 (false light) + $25,207.36 (wrongful termination) + $25,762.81(emotional distress) =$173,708.34

[13] Defendants do not give the Court an amount they seek to recover for bringing the present attorney's fee motion. While Defendants' billing appears to indicate over $5,000 was billed for the original attorney's fee motion in 2006, the Court finds that amount excessive and accordingly, reduces it to $3,500.

novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. <u>Blanchard</u>, 489 U.S. at 93.  The Court now considers each of these factors in turn.[14]

As to the first factor, the time and labor required, the Court has discussed this in the lodestar figure calculation, *supra*.

Second, the Court looks at the novelty and difficulty of the legal issues presented in this matter.  Since the Court finds that the legal issues are not particularly novel, the Court will not enhance the award.

The Court next considers the skill requisite to perform the legal work properly.  Although defense counsel is experienced in employment litigation as it pertains to public entities and possess skills particular to these cases, the Court is not inclined to enhance the award based on this factor.

The fourth factor is the preclusion of other employment because of this case.  There is no indication that defense counsel was precluded from working on other matters, and thus, the Court does not consider this factor.

Fifth, the Court considers the customary fee charged.  Since Defendants have provided no indication of the usual fees for this type of case, other than the <u>Lyon case</u>, the Court will not adjust the fee award.   <u>Lyon</u>, 2007 WL 707124.

---

[14]The Court notes that it is not required to address all of the factors, but does so in light of its "superior understanding of th[is] litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." <u>Jordan v. Multnomah County</u>, 815 F.2d 1258, 1264 n.11 (9th Cir. 1987).

The sixth factor is whether the fee is fixed or contingent. The fee in this case was a fixed fee, specifically $135 for partners, $115 for associates, and $65 for paralegals. The Court will not enhance the lodestar figure due to this factor.

Next, the Court looks at the time limitations imposed on defense counsel by Defendants or other circumstances. Because Defendants report no such limitations, the Court does not take this factor into account.

The eighth factor the Court considers is the amount involved and the results obtained. Defendants assert that the results obtained were "excellent" because summary judgment was granted for Defendants as to all but one claim, which was dismissed earlier in the case. The Court recognizes that the degree of success obtained is "'the most critical factor' in determining the reasonableness of a fee award." Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436). However, the Court notes that since Hensley was decided, the United States Supreme Court has established that the lodestar figure should be adjusted only in rare or exceptional cases. See Blum, 465 U.S. at 899-901.

Next, the Court considers the experience, reputation, and ability of defense counsel. Defendants argue that defense counsel is highly experienced. Defense counsel has been practicing law in the state of Arizona since 1985 and devotes the majority of her practice to defending governmental entities on employment-related matters (Doc. 374, Ex. B, Baker Aff. ¶¶ 1-2). Plaintiff does not dispute these contentions. However, since this factor was subsumed into the lodestar figure as to what is a reasonable hourly rate, the Court will not enhance the award based on this factor.

The tenth factor is the "undesirability" of the case. Defense counsel has not addressed the "undesirability" of this action, while Plaintiff has argued that it is the cases of employees, not employers, that are undesirable (Doc. 385, Bacher Aff. ¶ 14). Consequently, the Court will make no adjustment to the loadstar figure based on this factor.

The Court next looks at the nature and length of the professional relationship between Defendants and defense counsel. While defense counsel has represented many state, county,

and local government entities, there is no indication whether it has represented the Maricopa County Superior Court previously (Doc. 374, Ex. B, Baker Aff. ¶ 2). Thus, no enhancement or reduction of the lodestar figure is appropriate.

The final factor for the Court's consideration is awards in similar cases. Defendants point to one recent § 1983 case litigated in this District where hourly rates of $135 to $175 were deemed reasonable. Lyon, 2007 WL 707124. The Court finds this case helpful in terms of a reasonable hourly rate for this type of litigation, however, the Court will not adjust the lodestar figure further.

While the Court finds that an adjustment to the lodestar figure is not warranted based upon the Kerr factors, an adjustment is appropriate based upon Plaintiff's financial situation. When awarding attorney's fees under A.R.S. § 12-341.01(A), whether an award would cause extreme hardship to Plaintiff is a permissible consideration. Associated Indem. Corp., 694 P.2d at 1184. Furthermore, "A district court in cases involving 42 U.S.C. § 1981, § 1983 or Title VII should consider the financial resources of the plaintiff in awarding fees to a prevailing defendant." Miller v. L.A. County Bd. of Educ., 827 F.2d 617, 621 (9th Cir. 1987). This is especially true when a fee request is as large as the one in the present case. "While an award of attorney's fees for a frivolous lawsuit may be necessary to fulfill the deterrent purposes of 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k), the award should not subject the plaintiff to financial ruin." Id. (citation omitted). Importantly, though, a district court should not refuse to award attorney's fees to a prevailing defendant solely due to a plaintiff's financial situation. Id. at 621 n.5.

The Court will reduce the lodestar figure by $85,514.84, or approximately fifty percent. As none of the Kerr factors merit an adjustment to the lodestar figure, the Court points out that Plaintiff's financial hardship is the sole reason for the reduction in fees. Plaintiff brought ten claims in his Amended Complaint, many of which were frivolous from the outset of the litigation. By the summary judgment stage, it was clear that the claims had little or no factual basis to support them, and thus, the Court granted summary judgment for

Defendants on all of the claims.  In determining the proper award, the Court has considered the excessive fees that the County was forced to incur along with Plaintiff's ability to pay. The Court recognizes Plaintiff's financial hardship, and that an award of the size sought by Defendants could subject the Plaintiff to "financial ruin."  However, the Court also recognizes that some award of attorney's fees is necessary to serve as a deterrent, and to ensure that future defendants and the courts are not saddled with frivolous and unsubstantiated claims.

The Court finds that $85,500 is a reasonable attorney's fee award in this case. Defendants will be awarded that amount in attorney's fees.  However, because the Court does not grant Defendants' the amount of attorney's fees they seek, Defendants' Motion for Attorney's Fees is granted in part and denied in part.

## III.   Non-Taxable Expenses

Non-taxable costs are not recoverable under A.R.S. § 12-341.01.  Ahwatukee Custom Estates Mgmt. Ass'n , Inc. v. Bach, 973 P.2d 106, 109 (Ariz. 1999).  However, under 42 U.S.C. § 1988, "the prevailing party 'may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client.'"  Dang v. Cross, 422 F.3d 800, 814 (9th Cir. 2005) (quoting Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994)).  The requested expenses are subject to a reasonableness standard.  Harris, 24 F.3d at 20.  Non-taxable expenses are also recoverable under Title VII and A.R.S. § 41-1481(J).  See 42 U.S.C. § 2000e-5(k) ("In any action or proceeding under [Title VII] the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee . . . as part of the costs"); A.R.S. § 41-1481(J) ("[T]he court may allow the prevailing party . . . a reasonable attorney's fee as part of the costs").  Defendants seek $53,533.66 in non-taxable expenses.

Plaintiff's chief complaint with regards to the documentation for the non-taxable expenses is its lack of specificity.  For example, entries for investigative services allegedly list only "for services rendered" without detailing what those services entailed (Doc. 385,

McCracken Aff. ¶ 36). The Court does not agree, and finds that the invoices submitted support the charges and provide sufficient detail of the services rendered.

Additionally, Plaintiff contests Defendants' request for computer-assisted legal research expenses. Plaintiff argues that the Westlaw charges submitted by Defendants fail to specify the subject matter of the research (Id. ¶ 37). Local Rule 54.2(e)(2)(B) addresses hourly timekeeper entries for legal research, not recovery of fees charged by Westlaw or Lexis-Nexis. LRCiv 54.2(e)(2)(B). Rather, Local Rule 54.2(e)(3) is the applicable rule and requires attorneys to identify each non-taxable cost with particularity. Defendants have met the requirements of both rules. LRCiv 54.2(e)(3). Defense counsel submitted timekeeper entries that identify the legal issues researched. They also have presented adequately detailed documentation regarding electronic legal research costs. The Court will award Defendants the requested amounts for Westlaw research.

Finally, Plaintiff argues that Green & Baker's internal billing regarding copies, totaling over $11,000, does not indicate what was copied (Id. ¶ 39). Copying costs are recoverable under 42 U.S.C. § 1988 as non-taxable costs. Harris, 24 F.3d at 19-20. The Court finds that it would be unduly burdensome in a case of this magnitude to require users to type in a description of each copied document. Defendants' billing indicates that $0.10 per page was charged for the copies (Doc. 374, Ex. C). The Court finds Defendants' request reasonable and will award the full amount of copying expenses.

Based upon the above reasons, the Court finds that Defendants' descriptions of their non-taxable expenses are sufficient. Thus, the Court will award Defendants non-taxable expenses, but not in the amount requested. Since non-taxable expenses are not recoverable under A.R.S. § 12-341.01, the Court will apportion the expenses equally amongst Plaintiff's ten claims,[15] and then subtract the amount of expenses attributable to Plaintiff's contract-

---

[15] Defendants seek $53,533.66 in expenses. Dividing that total by Plaintiff's ten claims results in $5,353.37 of expenses being awarded for each claim.

based claims.[16]  The Court concludes that this form of apportionment is appropriate because Defendants have provided no indication which expenses are attributable to which claims.[17] As a result, the Court will award Defendants non-taxable expenses of $40,150.23.[18]

**IV.    Post-Judgment Interest**

Defendants are entitled to post-judgment interest on awards of attorney's fees and costs under § 1988.  Friend v. Kolodzieczak, 72 F.3d 1386, 1391-92 (9th Cir. 1995).  Under 28 U.S.C. § 1961(a), defendants are entitled to post-judgment interest on judgments "from the date of the entry of the judgment."  28 U.S.C. § 1961(a).  This statute has been held to apply to awards of attorney's fee and costs under § 1988.  Friend, 72 F.3d at 1391 (citing Spain v. Mountanos, 690 F.2d 742, 747-48 (9th Cir. 1982)).  The interest on the award of attorney's fees and costs runs from the date that entitlement to fees is secured, rather than from the date the exact quantity is set.  Id. at 1391-92 (citations omitted).

**CONCLUSION**

In their Motion for Attorney's Fees and Related Non-Taxable Costs, Defendants' requested attorney's fees in the amount of $315,974.65 and non-taxable expenses in the amount of $53,533.66.  After examining Defendants' entitlement to attorney's fees under A.R.S. § 12-341.01(A), 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k) and A.R.S. § 41-1481(J), the Court found that Defendants were entitled to $171,104.84 in attorney's fees, and determined that amount to be the lodestar figure.  This amount included $3,500 in fees

---

[16]Plaintiff's contract-based claims included breach of contract, breach of the covenant of good faith and fair dealing, and due process.  Since due process was half of Count 9 of Plaintiff's Amended Complaint, half of the $5,353.37 attributable to Count 9 will be awarded.

[17]Defendants attach to their motion a chart breaking down the non-taxable expenses into various categories, such as copying, traveling expenses, etc. (Doc. 374, Ex. F). However, there is no breakdown allocating these various expenses to one of Plaintiff's ten claims, as was done for the attorney's fees.

[18]$5,353.37 (breach of contract) + $5,353.37 (breach of covenant of good faith and fair dealing) + $2,676.69 (due process) = $13,383.43
$53,533.66-$13,383.43 =$40,150.23

related to bringing the present attorney's fee motion.  Taking into account Plaintiff's financial resources, the Court further reduced the attorney's fee award to $85,500.  As to expenses, the Court reduced the amount recoverable by Defendants to $40,150.23.

Accordingly,

**IT IS HEREBY ORDERED** granting in part and denying in part Defendants' Motion for Attorney's Fees and Related Non-Taxable Costs (Doc. 374).

**IT IS FURTHER ORDERED** that Defendants are awarded $85,500 in attorney's fees and $40,150.23 in non-taxable expenses, for a total of $125,650.23.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendants in the amount of $125,650.23 and against Plaintiff.

**IT IS FURTHER ORDERED** that the foregoing amount be paid with interest from the date of judgment.

DATED this 20th day of March, 2009.

Stephen M. McNamee
United States District Judge